**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROSETTA ANALYTICS, INC., a Delaware corporation,<br><br>     *Plaintiff,*<br><br><br>  vs.<br><br><br>VAIBHAVA GOEL and ETIENNE MARCHERET,<br><br>     *Defendants*. | **JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Rosetta Analytics, Inc. ("Rosetta Analytics" or the "Company"), through its undersigned attorneys, for its Verified Complaint for Injunctive and Other Relief (the "Complaint") against Defendants Vaibhava Goel ("Goel") and Etienne Marcheret ("Marcheret"), states as follows:

### INTRODUCTION

This action arises from Goel and Marcheret's scheme to steal Rosetta Analytics' confidential information and trade secret software code; their subsequent theft of that confidential information and trade secret software code; their attempts to disable automatic backups of files to disrupt the audit trail and conceal their illegal activities; and their subsequent refusal to return the confidential information and trade secret software code they stole.

### PARTIES

1.  Rosetta Analytics is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Woodridge, Illinois.

23223208.4

2.      Upon information and belief, Goel is an individual that resides at 50 Seven Bridges, Chappaqua, NY 10514.

3.      Upon information and belief, Marcheret is an individual that resides at 4 Bogert Avenue, White Plains, NY 10606.

4.      Goel and Marcheret worked for Rosetta Analytics from March 20, 2017 through April 10, 2018, when they resigned from their employment with the Company.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (actions arising under the laws of the United States) as this action arises, in part, under the Defend Trade Secrets Act ("DTSA"), § 18 U.S.C. 1831 *et seq.*; the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. 1030 *et seq.*; and the Copyright Act, 17 U.S.C. § 501. An additional basis for subject matter jurisdiction is 28 U.S.C. § 1338 (actions arising under an Act of Congress relating to copyrights and trademarks).

6.      The Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction over claims relating to those for which the court has original jurisdiction) as each of the claims in this action are so closely related that they form part of the same case or controversy.

7.      This Court has personal jurisdiction over Marcheret and Goel, as they have frequent, continuous contacts with Illinois. Further, Marcheret and Goel entered into contracts that are substantially connected with Illinois and give rise to certain of the claims in this action. In addition, pursuant to such contracts, Marcheret and Goel consented to personal jurisdiction in Illinois and agreed that all causes of action arising out of such contracts would be governed and construed under the laws of the state of Illinois.

2

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial portion of the acts, omissions and transactions giving rise to Rosetta Analytics' injury occurred in this district. Additionally, in the contracts giving rise to certain of the claims in this action, Goel and Marcheret agreed that any action arising out of the contract would be brought in state or federal court in Chicago, Illinois.

## **FACTS**

### A.  **The Business of "Deep Learning" Software**

9.      Rosetta Analytics is a technology firm that has developed cutting-edge, proprietary, artificial intelligence software (the "Software") that utilizes "deep learning" to make accurate predictions about future outcomes.

10.     The predictive accuracy of the Software is stronger than any similar offering by a competitor, to the extent a similar offering even exists.

11.     The Software is also unique in the limited amount of data it requires to make accurate predictions. Specifically, the Software is able to accurately forecast particular outcomes based on comparatively small data sets. Other machine learning and "deep learning" software requires millions, even billions of pieces of data in order to form predictions.

12.     The Software is Rosetta Analytics' primary product and investment.

13.     Rosetta Analytics currently uses the Software to transform capital market data into artificial intelligence-driven predictive algorithms. But the Software can be applied to nearly *any* industry with historic data, even if such data is sparse, to identify trends and create predictive algorithms. Given the breadth of applications, the Software's potential is virtually limitless.

3

**B. Rosetta Analytics Hires Goel and Marcheret**

14.     From March 20, 2017, to April 10, 2018, Rosetta Analytics employed Goel as its Chief Science Officer and Marcheret as its Vice President of Machine Learning. Additionally, through a Second Amended and Restated Stockholders Agreement (the "Stockholders Agreement"), Goel and Marcheret became vested shareholders in Rosetta Analytics, a closely held corporation.

15.     As Chief Science Officer, Goel's primary responsibilities were to manage Rosetta Analytics' scientific, technologic and research operations with respect to the Software.

16.     Marcheret reported directly to Goel, and was primarily responsible for the development of the Software's predictive analytic functions.

17.     In connection with their employment, Goel and Marcheret each executed a "Nondisclosure, Confidentiality and Assignment Agreement" (the "NDA") that requires them to, *inter alia*, hold Rosetta Analytics' confidential information in the strictest confidence both during the term of their employment and after.

18.     The NDA further provides that in the event of any breach of the NDA, Rosetta Analytics would be entitled to equitable relief and Goel and Marcheret would pay all costs incurred by the Company in enforcing the terms of the NDA. The NDA states, in relevant part:

> 2.5.     Protection and Return of Confidential Information. I agree to exercise all reasonable precautions to protect the integrity and confidentiality of Confidential Information in my possession and not to remove any materials containing Confidential Information form my duty location, whether my home or the offices of the Company, expect to the extent necessary to my duties pursuant to my association with the Company or unless expressly authorized in writing by an executive of the Company. Upon termination of my association with the Company, or at any time upon the Company's request, I shall return immediately to the Company any and all notes, memoranda, specifications, devices, formulas and documents, together with copies thereof, and any other

4

material containing or disclosing any Confidential Information of the Company or Third Party Information then in my possession or under my control.

8.6.　Legal and Equitable Remedies. I acknowledge that (a) the business of the Company and its Affiliates is global in scope and is services may be marketed and sold throughout the world; (b) the Company and its Affiliates compete with other businesses that are or could be located in any part of the world; (c) the Company has required that I make the covenants contained in this Agreement as a condition of my association with the Company; and (d) the restrictions contained in this Agreement are necessary for the protection of the business and goodwill of the Company and its Affiliates and are reasonable for such purpose. I agree that any breach of this Agreement by me will cause irreparable damage to the Company and its Affiliates and that in the event of such breach, the Company shall be entitled, in addition to monetary damages and to any other remedies available to the Company under this Agreement and at law, to equitable relief, including injunctive relief, and to payment by myself of all costs incurred by the Company in enforcing of the provision of this Agreement, including reasonable attorney's fees. I agree that should I violate any obligation imposed on me in this Agreement, I shall continue to be bound by the obligation until a period equal to the term of such obligation has expired without violation of such obligation.

A copy of the NDA is attached as Exhibit 1.

19.　　Additionally, in the NDA, Goel and Marcheret each affirm that Rosetta Analytics owns and derives value from its confidential information, and that Rosetta Analytics owns all of its existing inventions and any inventions to which Goel or Marcheret contribute during the course of their employment with the Company. (Exhibit 1, §§ 2.1, 3.1–3.3). Goel and Marcheret further commit to keep records of any and all inventions made during their employment, and to keep the Company informed of such inventions. (*Id*. §§ 3.4-3.6).　Finally, Goel and Marcheret each aver that they are not under any current restrictive covenants restricting their duties for Rosetta Analytics and would not improperly use or disclose any proprietary information or trade secrets of any other

5

employer, person or entity with whom they had an agreement or owed a duty to keep such information confidential. (*Id*. §§ 4.1-4.2).

**C. Rosetta Analytics Develops and Protects Confidential and Trade Secret Software and Business Information**

20. In connection with its business, Rosetta Analytics has developed and maintains the Software at significant cost and expense.

21. Portions of the Software are proprietary, highly confidential, and constitute a trade secret, including: algorithms, methodologies, and code utilizing "deep learning" (the "Confidential Software Code").

22. The Confidential Software Code is the result of an investment of millions of dollars and thousands of hours of work, and is critical to Rosetta Analytics' business.

23. Rosetta Analytics limits access to the Confidential Software Code to a small group of individuals, and the information is not generally known outside of the Company.

24. As a result of its investment in its Confidential Software Code, Rosetta Analytics has a competitive advantage not available to other persons who do not possess the Confidential Software Code.

25. It would be difficult, if not impossible, for someone else to recreate the Confidential Software Code. At a minimum, it would require years of expense and effort to recreate even the most basic aspects of the Confidential Software Code.

26. The Confidential Software Code gives Rosetta Analytics a competitive advantage in a highly competitive industry.

27. Additionally, through thousands of hours of planning and research, Rosetta Analytics has developed strategic and tactical business plans, marketing projects and initiatives, pricing structures and strategies, research and development activities, financial results and

6

forecasts, and customer, prospect and supplier lists and data, which it maintains as confidential and limited to a finite group of individuals who are subject to non-disclosure agreements (the "Confidential Business Information;" collectively with Confidential Software Code, the "Confidential Information").

28.     The Confidential Information derives independent economic value from not being generally known, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its use or disclosure.

29.     Rosetta Analytics undertakes reasonable and diligent measures to maintain the secrecy of its Confidential Information by, among other things: (1) limiting access to the Confidential Information to a select group of employees; (2) storing the Confidential Information on encrypted hard drives; (3) requiring multiple levels of password protection; (4) requiring employees to regularly update passwords; (5) requiring employees who have access to the Confidential Information to sign nondisclosure agreements; (6) utilizing a development site with multiple layers of security; and (7) terminating personnel's access to the Confidential Information upon conclusion of their association with the Company and requiring them to return such information.

**D.  Goel and Marcheret Steal Rosetta Analytics' Confidential Software Code and Business Information**

30.     Pursuant to their job duties, Goel and Marcheret had access to the Confidential Information, including the Confidential Software Code.

31.     Specifically, both Goel and Marcheret researched, developed and wrote key components of the Confidential Software Code, including those portions constituting trade secret information.

7

32.     Further, Goel and Marcheret had extensive, intricate, and specific knowledge of the Confidential Business Information, and had been introduced to a number of Rosetta Analytics' actual and prospective clients, strategic partners, and potential purchasers.

33.     Not long after they were hired in March 2017, Goel and Marcheret engaged in a scheme to exploit their respective positions with the Company for personal gain. Just months into their employment, and after verifying the viability of the Confidential Software Code, Goel and Marcheret demanded to renegotiate their contracts and sought to compel the Board of Directors to sell the Company.

34.     In response to these demands and to ensure software development continued, Rosetta Analytics granted Goel and Marcheret additional equity in the Company and began exploring the viability of selling the Company by, among other things, getting an independent valuation and approval from investors.

35.     By February 2018, Rosetta Analytics was engaged in discussions with specific potential buyers and strategic partners. Despite this swift action, Goel and Marcheret expressed impatience with the speed with which the possible sale had progressed.

36.     On or about April 3, 2018, Goel and Marcheret advised the founders of Rosetta Analytics that because the sale was taking too long, they intended to look for jobs with one of Rosetta Analytics' potential buyers, strategic partners or competitors.

37.     Inexplicably, Goel and Marcheret simultaneously demanded direct involvement in and control over the potential sale process.  In fact, on April 7, 2018, Goel and Marcheret exchanged drafts of an email they were planning to send to the President of Rosetta Analytics in which they made demands concerning the sales strategy and claimed to be acting "[i]n the best interest of Rosetta Analytics" as "business partners."

8

38.     In light of these disclosures, on April 9, 2018, counsel for Rosetta Analytics wrote to remind Goel and Marcheret of their duties as employees and shareholders of Rosetta Analytics, including by attaching copies of the NDA and the Stockholder Agreement. A copy of the April 9, 2018 correspondence is attached as Exhibit 2.

39.     Also on April 9, 2018, the President of Rosetta Analytics emailed Goel and Marcheret to request, pursuant to the NDAs, that they immediately return all Company materials, including Company laptops, any other hardware and all user IDs, passwords and any other form of security required to access Company materials.

40.     Shortly after receiving this correspondence, Goel and Marcheret intended to misappropriate, and did misappropriate, the Confidential Software Code and other Confidential Information by transferring the Confidential Software Code and other Confidential Information from Rosetta Analytics' computer systems to personal external devices and disabling automatic backups of files containing such Confidential Information - both misappropriating Rosetta's Confidential Information and stealing its Confidential Software Code.

41.     Specifically, on April 9, 2018, Marcheret accessed Company files contained on his password protected Company-issued computer. He then utilized sophisticated terminal commands to systematically remove the Confidential Software Code and other Confidential Information from Rosetta Analytics' systems and transferred that information to a desktop folder on his Company computer. Marcheret then copied the desktop folder to personal hardware devices. These devices included at least a thumb drive, Seagate external hard drive (the "Seagate Drive"), and Samsung phone. Next, Marcheret backed up his computer but excluded the desktop folder, which temporarily contained the Confidential Information, from the backup process.

42.     Among the files that Goel and Marcheret took were the following:

9

- A file titled <u>20bin.LSTM</u>, which is the sole copy of a recent, critically important development version of the Software which includes Confidential Software Code. This file was transferred to the Seagate Drive and is no longer in Rosetta's possession or control.

- Models and experiments relating to the <u>20bin.LSTM</u> file and the Confidential Software Code.

- A folder titled "<u>Research</u>," subfolders titled "<u>AllPreviousResearch</u>," "<u>papers</u>," and "<u>meetings</u>."

- A file titled <u>Ltr Marcheret 4.9.2018</u>, believed to be the letter described in paragraph 38 and attached as Exhibit 2.

43.     As mentioned above, after the transfer was complete, Marcheret disabled certain aspects of the automatic backups of his Company-owned computer. By excluding certain files from the routine backup process, Marcheret disrupted the audit trail of his activities, thereby attempting to cover up a record of the unlawful file transfers. He further attempted to conceal his activities by deleting the bash history from his Company computer.

44.     On April 10, 2018, Goel and Marcheret each resigned from Rosetta Analytics.

45.     Goel and Marcheret each induced the other to leave Rosetta Analytics in order to work for another company in the financial industry or establish a competing company.

**E.  Rosetta Analytics Discovers and Investigates the Theft**

46.     On or about June 18, 2018, Rosetta Analytics first discovered through a forensic review of the Company-owned computers used by Goel and Marcheret that there were significant irregularities in the Company's electronically stored information files, and that models and other experiments had been removed from Rosetta Analytics' systems to external devices belonging to Goel and Marcheret. Due to the volume and complexity of the data and programs used, Rosetta Analytics' forensic review of Goel's and Marcheret's computers is ongoing.

47.     Upon discovering the irregularities, Rosetta Analytics, through its counsel, immediately contacted Goel and Marcheret to demand that they return all external devices containing the Confidential Information. Rosetta Analytics specifically demanded return of the 20bin.LSTM version of the Confidential Software Code, which had been completely removed from Rosetta Analytics' systems and was no longer in its custody or control.

48.     Counsel for Goel and Marcheret, Scott Mautner ("Mautner"), responded via letter dated June 21, 2018, a copy of which is attached as Exhibit 3. In the letter, Mautner represents that the Seagate Drive is non-functional and that neither Marcheret nor Goel could access it to determine the extent to which it contained Rosetta Analytics' Confidential Information; however, Mautner acknowledges that there "may be some files on the Seagate drive that belong to the company." *Id*.

49.     Mautner later disclosed to Rosetta Analytics that the Seagate Drive had been left with the "Geek Squad" at Best Buy who were attempting to "fix" the device. He further admitted to counsel for Rosetta Analytics that "there is no doubt that Rosetta's files are on the Seagate Drive" at Best Buy.

50.     Upon learning that its Confidential Information was in the hands of multiple unauthorized third parties, Rosetta Analytics engaged Transperfect Legal Solutions ("TLS"), a forensic investigation firm experienced in data recovery and digital evidence preservation and analysis, to conduct a forensic examination of Goel's and Marcheret's Company laptops and other hardware.

51.     Rosetta Analytics demanded that Goel and Marcheret make the Seagate Drive available to TLS who could examine the Seagate Drive in a manner that would protect both the Confidential Information and any information that might belong to Goel or Marcheret. The

Company further committed to undertake a transparent forensic process by having TLS prepare a report concerning its findings to be provided to all parties.

52.     Since making this demand, and despite Rosetta Analytics' unequivocal right to the immediate return of the Confidential Information, Goel and Marcheret have resisted complying with their contractual and legal obligations.

53.     Not only have Goel and Marcheret refused Rosetta Analytics' request to certify that they do not possess Confidential Information, (see June 25, 2018 letter from Rosetta Analytics' counsel, attached as Exhibit 4), they have also refused to provide Rosetta Analytics or TLS with the Seagate Drive because it allegedly contains personal information belonging to Marcheret.

54.     To assuage their concerns, Rosetta Analytics negotiated a non-disclosure agreement with Marcheret by which TLS agreed to keep as confidential any of Marcheret's personal information that may be on the Seagate Drive, as well as Rosetta Analytics' Confidential Information. A copy of the non-disclosure agreement executed by TLS and Rosetta Analytics is attached as Exhibit 5.

55.     To date, Marcheret has refused to sign the non-disclosure agreement.

56.     The reluctance of Goel and Marcheret to turn over the Seagate Drive to TLS is even more concerning given their recent position signifying that Marcheret has retained the Confidential Information. See July 11, 2018 letter from Mautner, attached as Exhibit 6.

## F.  The Software Stops Functioning, Causing Rosetta Analytics to Lose Business Opportunities and Financing

57.     Goel's and Marcheret's theft and misappropriation of the 20bin.LSTM, development version of the Software, and its supporting documentation and research files left Rosetta Analytics with only a commercial version of the Software that lacked critical algorithms, methodologies, and code utilizing the "deep learning" essential to Rosetta Analytics' business.

12

Rosetta Analytics has been forced to engage in a painstaking process of attempting to reconstruct a development version of the Software line by line through reverse engineering.

58.     As a result of Goel's and Marcheret's theft of the Confidential Software Code, Rosetta Analytics was forced to:

      a.   stop running revenue-generating live strategies for a key customer;

      b.   halt discussing strategic partnerships with potential business partners;

      c.   halt all discussions regarding a potential sale of the Company;

      d.   abandon funding for new strategic initiatives; and

      e.   abandon the opportunity to obtain favorable terms to refinance a $3,000,000 debt instrument.

59.     The foregoing has been the direct result of the theft and misappropriation of Rosetta Analytics' Confidential Software Code by Goel and Marcheret and caused Rosetta Analytics millions of dollars in damages.

## COUNT I – FEDERAL DEFEND TRADE SECRETS ACT
### (18 U.S.C. § 1831 *et seq.*)

60.     Rosetta Analytics re-alleges and incorporates by reference paragraphs 1 through 59, as if fully set forth herein.

61.     Rosetta Analytics' Confidential Information is the result of years of work and substantial expenditure of time, effort, and expense and constitutes trade secrets within the meaning of the DTSA, 18 U.S.C. § 1839(3).

62.     Those trade secrets are financial, business, scientific, technical, economic and engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, and codes, both

23223208.4

tangible and intangible, and stored, compiled, and memorialized physically, electronically, graphically, and photographically, including:

- The Confidential Software Code, including algorithms, methodologies and code utilizing "deep learning;" and

- The Confidential Business Information, including strategic and tactical business plans, marketing projects and initiatives, research and development activities, pricing structure and strategies, financial results and forecasts, and customer, prospect and supplier lists and data.

63.     The Confidential Information acquired and developed by Rosetta Analytics derives independent economic value, actual or potential, from the fact that it is neither generally known to the public, nor readily ascertainable by the public through proper means.   Through Rosetta Analytics' substantial investment of time, effort, and expense in developing its Confidential Information, it is able to operate and grow its business in a way that is difficult, if not impossible, for its competitors to duplicate through lawful means.

64.     Rosetta Analytics has taken reasonable measures to keep its Confidential Information secret, including by implementing policies requiring individuals with access to the Confidential Information to keep it secret, limiting access to the Confidential Information to key employees, securing the Confidential Information with the use of passwords, key cards, encryption, and other security measures, utilizing a development site with multiple layers of security, terminating personnel's access to the Confidential Information upon conclusion of employment and requiring the return of such information, and requiring personnel with access to the Confidential Information to execute non-disclosure agreements.

65.     Goel and Marcheret have acquired and/or disclosed Rosetta Analytics' Confidential Information through improper means and without Rosetta Analytics' authorization or consent. Moreover, Goel and Marcheret's misappropriation of the Confidential Information was willful and malicious. Shortly after receiving a letter from Rosetta Analytics' counsel reminding them of their

14

obligations under the NDA not to use or disclose the Confidential Information for any improper purpose, Marcheret surreptitiously transferred Confidential Information, including the Confidential Software Code, from Rosetta Analytics' systems to the Seagate Drive, and attempted to conceal these activities through irregular backup processes and deleting the bash history from his Company-issued computer.

66.     Goel and Marcheret have acquired and/or disclosed Rosetta Analytics' Confidential Information in violation of their obligations to maintain the secrecy of this information. Indeed, despite repeatedly being reminded of their obligation to maintain the secrecy of the Confidential Information, Goel and Marcheret have admitted to delivering the Confidential Information to Best Buy, an unauthorized third party.

67.     Since Goel and Marcheret left their employment with Rosetta Analytics, Rosetta Analytics has not and does not consent, expressly or implicitly, to the use or disclosure by Goel or Marcheret of the Confidential Information.

68.     Rosetta Analytics has continued to notify Goel and Marcheret of their obligations under the NDA and under the law, and has demanded that they cease and desist any access, use, disclosure or manipulation of the Confidential Information. Rosetta Analytics has further requested that Goel and Marcheret certify that they have not taken any of the Confidential Information. As of the date of filing, Goel and Marcheret have refused to make such certifications.

69.     The DTSA allows for the following relief: (1) an award of damages for the actual loss caused by the misappropriation of the trade secrets and damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss, (18 U.S.C. § 1836(3)(B); (2)) an award of exemplary damages for willful and malicious

15

misappropriation of trade secrets, (18 U.S.C. § 1836(3)(C)); and (3) injunctive relief to prevent any actual or threatened misappropriation of trade secrets, (18 U.S.C. § 1836(3)(A)).

70.     Rosetta Analytics is being, or will be harmed, through the misappropriation of its Confidential Information. The exact amount of the harm will be difficult, if not impossible, to ascertain, but includes the loss of business and the diminution of value in the Confidential Information.  This harm is likely to be irreparable. Further, the harm Rosetta Analytics will suffer if Goel and Marcheret are not enjoined greatly outweighs any harm Goel and Marcheret would suffer from the issuance of injunctive relief.

WHEREFORE, Rosetta Analytics respectfully requests the Court enter an order granting it all appropriate relief against Defendants Vaibhava Goel and Etienne Marcheret, including:

A.     An order providing for the seizure of the Seagate Drive and all other external devices containing the Confidential Information to prevent the propagation or dissemination of the Confidential Software Code.

B.     A preliminary and permanent injunction prohibiting Goel and Marcheret, and all those acting in concert with them, from using or disclosing to any person Rosetta Analytics' Confidential Information and from continuing to be in breach of the NDA, and ordering Goel and Marcheret to immediately preserve and return to Rosetta Analytics all Confidential Information, and all copies thereof, regardless of the format in which such copies are stored or maintained.

C.     An award of Rosetta Analytics' actual damages for the misappropriation of its Confidential Information.

D.     An award of exemplary damages for Goel and Marcheret's willful and malicious misappropriation of Rosetta Analytics' Confidential Information.

16

E.     Such other and further relief as the Court deems just and proper, including, but not limited to, an equitable accounting for all profits lost by Rosetta Analytics or reaped by Goel and Marcheret and/or their current employers or affiliates, an accounting as to all persons to whom Goel and Marcheret disclosed the Confidential Information, and an award of attorney's fees.

## COUNT II – ILLINOIS TRADE SECRETS ACT
### (765 ILCS 1065/1 *et seq.*)

71.     Rosetta Analytics' re-alleges and incorporates by reference paragraphs 1 through 70, as if fully set forth herein.

72.     The Illinois Trade Secrets Act, 765 ILCS 1065/1 ("ITSA"), also prohibits the misappropriation of trade secrets.

73.     The ITSA allows for the following relief: (1) an award of damages for the actual loss caused by the misappropriation of the trade secrets and damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss, (765 ILCS 1065/4(a)); (2) an award of exemplary damages for willful and malicious misappropriation of trade secrets, including reasonable attorney's fees (765 ILCS 1065/4(b));and (3) injunctive relief to prevent any actual or threatened misappropriation of trade secrets (765 ILCS 1065/3).

74.     As a result of Goel's and Marcheret's unlawful actions, Rosetta Analytics is being or will be harmed through the misappropriation of its Confidential Information. The exact amount of the harm will be difficult, if not impossible, to ascertain, but includes the loss of business and the diminution of value in Rosetta Analytics' Confidential Information.  This harm is likely to be irreparable. Further, the harm Rosetta Analytics will suffer if Goel and Marcheret are not enjoined greatly outweighs any harm Goel and Marcheret would suffer from the issuance of injunctive relief.

17

WHEREFORE, Plaintiff Rosetta Analytics respectfully requests the Court enter judgment in favor of Rosetta Analytics and against Defendants Vaibhava Goel and Etienne Marcheret, granting all appropriate relief, including:

A.     A preliminary and permanent injunction prohibiting Goel and Marcheret, and all those acting in concert with them, from using or disclosing to any person Rosetta Analytics' Confidential Information and trade secrets and from continuing to be in breach of the NDA, and ordering Goel and Marcheret to immediately preserve and return to Rosetta Analytics any of Rosetta Analytics' Confidential Information or trade secrets, and all copies thereof, regardless of the format in which such copies are stored or maintained.

B.     An award of Rosetta Analytics' actual damages for the misappropriation of its Confidential Information and trade secrets.

C.     An award of exemplary damages for Goel and Marcheret's willful and malicious misappropriation of Rosetta Analytics' Confidential Information and trade secrets.

D.     Such other and further relief as the Court deems just and proper, including, but not limited to, an equitable accounting for all profits lost by Rosetta Analytics or reaped by Goel and Marcheret and/or their current employers or affiliates, and an accounting as to all persons to whom Goel and Marcheret disclosed the Confidential Information and trade secrets.

## COUNT III – BREACH OF CONTRACT
### (ILLINOIS LAW)

75.     Rosetta re-alleges and incorporates by reference paragraphs 1 through 74, as if fully set forth herein.

76.     Goel and Marcheret each entered into a valid and enforceable NDA, requiring each of them to hold Rosetta Analytics' Confidential Information in the strictest confidence, both during the term of their employment with Rosetta Analytics and after, and not to solicit employees, clients

18

or prospective clients of Rosetta Analytics for a period of one year following the termination of their employment.

77.     Rosetta has fully performed its material obligations under the NDAs with Goel and Marcheret.

78.     Goel and Marcheret each breached their NDA by, among other things, failing to maintain appropriate documentation concerning inventions, inducing each other to terminate their relationship with Rosetta Analytics, attempting to solicit the Company's actual and potential clients, strategic partners, and purchasers, transferring Confidential Information to personal external devices for unauthorized purposes, and delivering the Seagate Drive containing the Confidential Software Code and other Confidential Information to Best Buy without prior notice to Rosetta Analytics or assurances that Best Buy will maintain confidentiality.

79.     Rosetta Analytics has no adequate remedy at law and is suffering irreparable injury as a result of Goel's and Marcheret's breach of the NDAs.

WHEREFORE, Plaintiff Rosetta Analytics respectfully requests the Court enter judgment in favor of Rosetta Analytics and against Defendants Vaibhava Goel and Etienne Marcheret, granting all appropriate relief, including:

A.      A preliminary and permanent injunction prohibiting Goel and Marcheret, and all those acting in concert with them, from continuing to breach the NDAs.

B.      An award of Rosetta Analytics' actual damages for breach of the NDAs.

C.      An award of the costs and attorney's fees incurred to enforce the NDAs.

D.      Such other and further relief as the Court deems just and proper.

## COUNT IV - THE COMPUTER FRAUD AND ABUSE ACT
### (18 U.S.C. § 1030 *et seq.*)

80.     Rosetta Analytics re-allege and incorporate paragraphs 1 through 79, as if fully set forth herein.

81.     Rosetta Analytics provided Goel and Marcheret with access to Rosetta Analtyics' "protected computers," as defined under CFAA, 18 U.S.C. §1030(e)(2)(B).

82.     Rosetta Analytics provided Goel and Marcheret access to its protected computers solely for work-related purposes and to further the business of Rosetta Analytics.

83.     Goel and Marcheret used Rosetta Analytics' protected computers in interstate and foreign commerce and communications.

84.     Rosetta Analytics required that access to its protected computers be controlled through the use of a password, among other security measures.

85.     Prior to resigning from Rosetta Analytics, Goel and Marcheret secretly, intentionally, without authority, and in excess of any previous authority given to them, accessed Rosetta Analytics' protected computers and transmitted information from the computers to themselves and/or to each other.

86.     At the same time, Goel and Marcheret intentionally deleted Rosetta Analytics' "bash history" and interfered with its audit trails of transfer activities.

87.     Goel's and Marcheret's actions in wrongfully taking Confidential Information from Rosetta Analytics' systems, and then deleting Rosetta Analytics' file and audit histories, indicate that Goel and Marcheret were attempting to disrupt Rosetta Analytics' computer systems and audit processes in order to cover up their illegal activities.

88.     Goel and Marcheret caused "damage" and "loss" as those terms are defined under CFAA, and in excess of $5,000.

20

89. Goel and Marcheret proximately caused damage by impairing the integrity and availability of Rosetta Analytics' computer systems, programs, and information.

90. Goel and Marcheret proximately caused loss by causing Rosetta Analytics to incur over $5,000 in responding to Goel and Marcheret's wrongful actions, by, among other things, causing Rosetta Analytics to hire TLS to conduct a damage assessment, and attempt to restore data, programs, systems, and information. Rosetta Analytics has also suffered lost revenue as a result of Goel's and Marcheret's wrongful taking of valuable Confidential Information and disruption of computer systems.

91. Goel and Marcheret therefore violated 18 U.S.C. §§ 1030(a)(2)(C), (a)(4), (a)(5), and (b).

WHEREFORE, Plaintiff Rosetta Analytics respectfully requests the Court enter judgment in favor of Rosetta Analytics and against Defendants Vaibhava Goel and Etienne Marcheret, granting all appropriate relief, including: actual damages, punitive damages and attorney's fees, and all equitable remedies, including injunctive relief, as this Court deems fair and just.

## COUNT V - COPYRIGHT INFRINGEMENT
### (17 U.S.C. § 101, *et seq.*)

92. Rosetta Analytics re-allege and incorporate paragraphs 1 through 91, as if fully set forth herein.

93. Rosetta Analytics has a pending federal copyright application for registration of the Confidential Software Code. Rosetta Analytics' copyright in the Confidential Software Code is valid and enforceable.

94. By virtue of their employment with Rosetta Analytics, Goel and Marcheret had access to Rosetta Analytics' Confidential Software Code since at least as early as March 2017.

21

95.     Rosetta Analytics never provided permission for Goel or Marcheret to make copies of the Confidential Software Code and remove the Confidential Software Code from Rosetta Analytics' offices or computer systems.

96.     Goel and Marcheret copied the Confidential Software Code without permission.

97.     Upon information and belief, Goel and Marcheret have used and/or prepared derivative works based on the Confidential Software Code without permission.

98.     Goel and Marcheret have infringed upon Rosetta Analytics' copyright under the copyright laws of the United States, in violation of 17 U.S.C. § 101, *et seq.*

99.     Upon information and belief, Goel and Marcheret and/or their agents continue to infringe upon Rosetta Analytics' copyright for the Confidential Software Code after being notified of the infringing actions.

100.    Goel and Marcheret have knowingly and willfully infringed Rosetta Analytics' rights in and to its Confidential Software Code.

101.    Rosetta Analytics has been, and continues to be, irreparably harmed by Goel's and Marcheret's infringing acts, and there is no adequate remedy at law for such harm.

102.    Rosetta Analytics has suffered and will continue to suffer damages as a result of Goel's and Marcheret's infringement in an amount to be determined at trial.

WHEREFORE, Plaintiff Rosetta Analytics respectfully requests the Court enter judgment in favor of Rosetta Analytics and against Defendants Vaibhava Goel and Etienne Marcheret, granting all appropriate relief, including:

A.     Judgment in favor of Rosetta Analytics on its copyright infringement claim, pursuant to 17 U.S.C. § 101, *et seq.*;

22

23223208.4

B.    Damages on Rosetta Analytics' copyright infringement claim in an amount to be shown at trial, but in no event less than Rosetta Analytics' actual lost profits and/or Defendants' gains, profits, and advantages derived by their acts of infringement;

C.    An order restraining and enjoining Goel and Marcheret, their agents, servants and employees, and all persons acting in concert with them, preliminarily and permanently from: (1) copying, using, or selling the Confidential Software Code; and (2) from preparing derivative works based on the Confidential Software Code;

D.    Rosetta Analytics' costs, disbursements, and attorneys' fees to the extent allowed by law; and

E.    Such other and further relief as is just and equitable.

## COUNT VI – BREACH OF FIDUCIARY DUTY (DELAWARE LAW)

103.    Rosetta Analytics re-allege and incorporate paragraphs 1 through 102, as if fully set forth herein.

104.    Goel and Marcheret were key managerial employees of Rosetta Analytics, a Delaware Corporation. As a result, under Delaware law, Goel and Marcheret were Rosetta Analytics' fiduciaries, and thus, owed it duties of care and loyalty.

105.    Goel and Marcheret breached their duties of care and loyalty to Rosetta Analytics by, among other things, soliciting each other to resign from Rosetta Analytics, conspiring to establish a competing business, causing Rosetta Analytics to initiate processes to sell the Company and then resigning unexpectedly, and converting Rosetta Analytics' Confidential Information, including the Confidential Software Code.

106.    Additionally, by virtue of the trust and confidence instilled in them with respect to the Confidential Information, Goel and Marcheret had fiduciary responsibilities to Rosetta

23

Analytics under Delaware law, including the duty to safeguard the information and not to use or disclose the Confidential Information for the benefit of a competitor.

107.     Goel and Marcheret breached their fiduciary duties to safeguard and not improperly use or disclose the Confidential Information by, among other things, improperly transferring Rosetta Analytics' Confidential Information, including the Confidential Software Code, from Rosetta Analytics' systems to unauthorized external personal devices, including the Seagate Drive, and delivering the Seagate Drive to unauthorized third parties, including Best Buy, without any attempt to safeguard the confidentiality of the Confidential Software Code or any of the other Confidential Information belonging to Rosetta Analytics on the Seagate Drive.

108.     Rosetta Analytics has suffered damages as a result of Goel's and Marcheret's breach of their fiduciary duties, including the loss of an opportunity to refinance a $3,000,000 debt instrument in April 2018, lost profits, and costs incurred to investigate the breach of fiduciary duty and other misconduct of Goel and Marcheret.

WHEREFORE, Plaintiff Rosetta Analytics respectfully requests the Court enter judgment in favor of Rosetta Analytics and against Defendants Vaibhava Goel and Etienne Marcheret, granting all appropriate relief, including: actual damages, punitive damages and attorney's fees, and all equitable remedies, including injunctive relief, as this Court deems fair and just.

Respectfully submitted,

*/s/ Marcus S. Harris*

Marcus S. Harris
Rachel Schaller
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Dr., Suite 2800
Chicago, IL 60601
Tel.: (312) 527-4000
Fax: (312) 527-4011
mharris@taftlaw.com
rschaller@taftlaw.com

*Counsel for Plaintiff, Rosetta Analytics, Inc.*

25

## VERIFICATION

STATE OF ILLINOIS           )
                                )   SS:
COUNTY OF COOK          )

Angelo Calvello, President of Rosetta Analytics, Inc., being first duly cautioned and sworn states that he has read the foregoing Complaint, and that he states under penalty of perjury that the facts stated in the foregoing Complaint are true and correct to the best of his knowledge, information, and belief.

_____

Angelo Calvello

Sworn to and subscribed in my presence this 30 day of July, 2018

_____
Notary Public

"OFFICIAL SEAL"
Thomas S. Dal Compo
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3/26/2019

26