IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSETTA ANALYTICS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: 1:18-cv-05179 |
| v. | ) |
| | ) Judge Manish S. Shah |
| VAIBHAVA GOEL and ETIENNE MARCHERET, | ) |
| | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
<u>AND PRELIMINARY INJUNCTION</u>**

**I.    INTRODUCTION**

The Court should deny Plaintiff Rosetta Analytics, Inc.'s ("Plaintiff") motion for a temporary restraining order ("TRO"). Plaintiff has failed to meet its burden of proving that it is entitled to such extraordinary relief. First, Plaintiff's motion lacks any genuine urgency. Plaintiff has been aware of the Seagate hard drive since ***June***, at which time Defendants Vaibhava Goel ("Dr. Goel") and Etienne Marcheret ("Dr. Marcheret") (collectively, "Defendants") offered to make that hard drive available for forensic analysis. The "status quo" has not changed since then. Second, Plaintiff has failed to show that it is likely to succeed on the merits of any of its claims against Defendants because Plaintiff has not and cannot show that Defendants have in any way improperly used or disclosed Plaintiff's confidential information. At best, Plaintiff alleges that Defendants copied a single software file to an external hard drive. But the contents of this external hard drive have not been disclosed to any third parties.

Third, Plaintiff has failed to show that it will be irreparably harmed and that no adequate remedy at law exists. Defendants have assured Plaintiff that they have not shared the contents of

1

the external hard drive with any third parties, and that they will not do so in the future. Thus, Plaintiff can only speculate that its confidential information may fall into the hands of a competitor. But speculative harm is insufficient to support the grant of a TRO. Plaintiff has also failed to explain why any harm that it has or will allegedly incur cannot be adequately compensated with a damages award.

Fourth, because Plaintiff's proposed TRO is over-broad and prevents Defendants from using documents and files that are undoubtedly owned by Defendants, the harm to Defendants if the Court were to issue a TRO is substantially greater than the potential harm to Plaintiff. For all of these reasons, Plaintiff's motion for TRO should be denied.

## II. FACTUAL BACKGROUND

### A. Defendants' Employment By Plaintiff.

Defendants began working for Plaintiff on March 20, 2017.[1] (Complaint, Dkt. No. 1, ¶ 14.) Dr. Goel was hired as Plaintiff's Chief Science Officer, and Dr. Marcheret was hired as Plaintiff's Vice President of Machine Learning. (TRO Motion, Dkt. No. 9-1, at 2.) Defendants both left higher-paying jobs at IBM, and passed up even higher-paying opportunities in the industry, in order to work in a startup environment. (Marcheret Decl., **Ex. 1**, ¶ 1; Goel Decl., **Ex. 2**, ¶ 1.) Prior to their employment with Plaintiff, Drs. Goel and Marcheret spent nearly twenty years conducting research on advanced computer subjects, including artificial intelligence and machine learning, at IBM. (*Id.*)

Using their combined decades-worth of experience at IBM, Defendants built Plaintiff's deep learning software from scratch. (Marcheret Decl., Ex. 1, ¶ 2; Goel Decl., Ex. 2, ¶ 2.) Plaintiff's deep learning software is primarily used to solve investment problems. (Calvello Affidavit, Dkt. No. 9-2 at Exhibit A, ¶ 5.) Specifically, Plaintiff "transform[s] capital market

---

[1] Defendants' employment was at-will. (Dkt. No. 9-2 at Exhibit A-1, at 1.)

data into tradeable signals and then use[s] these signals as the foundation of scalable investment strategies." (*Id.*)

By September of 2017, Plaintiff had launched two investment strategies using a commercially-ready version of its software. (Calvello Affidavit, Dkt. No. 9-2 at Exhibit A, ¶ 26; Bonafede Affidavit, Dkt. No. 9-2 at Exhibit B, ¶ 13.) Within Defendants' first few months of employment, however, Defendants realized that Plaintiff lacked finance domain expertise. (Marcheret Decl., Ex. 1, ¶ 3; Goel Decl., Ex. 2, ¶ 3.) Defendants believed that this expertise was greatly needed in order to build a successful business, particularly in view of the fact that Plaintiff's software was intended to solve investment problems. (*Id.*)

In October of 2017, Defendants discussed this lack of finance domain expertise with Plaintiff's co-founders, Angelo Calvello and Julia Bonafede. (Marcheret Decl., Ex. 1, ¶ 4; Goel Decl., Ex. 2, ¶ 4.) Around this same time, Plaintiff's co-founders asked Defendants if they intended to start looking for different jobs. (Marcheret Decl., Ex. 1, ¶ 5; Goel Decl., Ex. 2, ¶ 5.) Defendants informed Plaintiff that they were not currently looking for jobs, and that they would inform Plaintiff prior to doing so. (*Id.*) Defendants and Plaintiff's co-founders subsequently decided that it was necessary to seek a strategic partnership with a larger financial institution that could provide Plaintiff with much-needed resources and expertise. (Marcheret Decl., Ex. 1, ¶ 4; Goel Decl., Ex. 2, ¶ 4.) On December 13, 2017, Plaintiff's Board of Directors agreed to explore a possible sale or strategic partnership. (Calvello Affidavit, Dkt. No. 9-2 at Exhibit A, ¶ 33.)

Between October of 2017 and March of 2018, Defendants and Plaintiff's co-founders approached approximately 15-20 companies in an effort to find the right partner or buyer, to no avail. (Marcheret Decl., Ex. 1, ¶ 6; Goel Decl., Ex. 2, ¶ 6.) Frustrated with Plaintiff's inability to find a suitable strategic partner, on or about April 3, 2018, Defendants informed Plaintiff that

they intended to look for other jobs. (*Id*.) Defendants made it clear that they did not wish to leave right away and would continue to help with the sale process, but would merely begin their job search while keeping Plaintiff informed and coordinated so as to not conflict with the sale process. (*Id*.) On April 6, 2018, Defendants met with Plaintiff's Board of Directors and Plaintiff's counsel. (Marcheret Decl., Ex. 1, ¶ 7; Goel Decl., Ex. 2, ¶ 7.) At this meeting, Defendants were essentially told that they could not look for other jobs as they had fiduciary responsibilities to Plaintiff, and a job search would allegedly interfere with the sale process. (*Id*.)

On April 9, 2018, Defendants informed Plaintiff that they intended to resign, and that they were willing to work on a transition plan to help with the transition and continuation of Plaintiff's business. (Calvello Affidavit, Dkt. No. 9-2 at Exhibit A, ¶ 44; Bonafede Affidavit, Dkt. No. 9-2 at Exhibit B, ¶ 19.) Later that same day, Plaintiff's President sent an email to Defendants asking them to return their company laptops. (Complaint, Dkt. No. 1, ¶ 39.) Also on April 9, 2018, Plaintiff's counsel sent letters to Defendants summarizing Defendants' non-disclosure and non-solicitation obligations, and advising Defendants to seek independent counsel. (4/9/18 Letters from B. Skjold to Defendants, Dkt. No. 1-1 at Exhibit 2.) On or about April 9, 2018, Plaintiff decided to shut down commercial operation of its software and ceased trading on its two investment strategies. (Calvello Affidavit, Dkt. No. 9-2 at Exhibit A, ¶ 45.)

      **B.    Defendants Have Never Improperly Disclosed Or Used Plaintiff's Confidential Information.**

On April 9, 2018, Dr. Marcheret copied a folder labeled "MyPersonalDocs" from his company laptop to a Seagate external hard drive ("Seagate Drive"). (Pochron Affidavit, Dkt. No. 9-2 at Exhibit C, ¶ 9.) In copying these personal files, Dr. Marcheret may have copied a small number of files relating to Plaintiff's projects.

On or about June 18, 2018, Plaintiff's counsel contacted Defendants to demand that they return the Seagate Drive. (Complaint, Dkt. No. 1, ¶ 47.) According to Plaintiff's counsel, Dr. Marcheret's Seagate Drive contained the sole version of a software file titled 20bin.LSTM. (*Id.*, ¶ 42.) The 20bin.LSTM file is in no way related to the commercial version of Plaintiff's software or the revenue generating live strategies that Plaintiff was running. (Marcheret Decl., Ex. 1, ¶ 9; Goel Decl., Ex. 2, ¶ 10.) Rather, 20bin.LSTM was an unproven experimental project that was not at all critical or essential to Plaintiff's running investment strategies. (*Id.*)

On June 21, 2018, Defendants' counsel informed Plaintiff that the Seagate Drive is non-functional, and that Defendants could not access it to determine whether or not it contained any of Plaintiff's files, including the 20bin.LSTM file. (Complaint, Dkt. No. 1, ¶ 48; 6/21/18 Letter from S. Mautner to B. Skjold, Dkt. No. 1-1 at Exhibit 3.) Nevertheless, Defendants offered to repair the Seagate Drive to determine whether the 20bin.LSTM file had been copied to it. (6/21/18 Letter from S. Mautner to B. Skjold, Dkt. No. 1-1 at Exhibit 3, at 1.) If the file was indeed copied to the Seagate Drive, Defendants offered to deliver the file to Plaintiff and delete it from the drive. (*Id.*) Defendants also advised Plaintiff that the 20bin.LSTM file was moved into or merged with another file called 20bin.LSTM.cnn. (*Id.*) Dr. Marcheret even offered to assist Plaintiff in locating the file. (*Id.* at 1-2.) On June 25, 2018, Plaintiff's counsel responded that "[w]e appreciate your offer to [repair the Seagate Drive]." (6/25/18 Letter from B. Skjold to S. Mautner, Dkt. No. 1-1 at Exhibit 4, at 1.) Around this same time, Dr. Marcheret brought the Seagate Drive to Best Buy to attempt to repair it. (Complaint, Dkt. No. 1, ¶ 49.) Other than the Best Buy "Geek Squad," the Seagate Drive has never been provided to any third parties, and no files have been copied, downloaded, removed, or deleted from the drive since Defendants resigned. (Marcheret Decl., Ex. 1, ¶ 10.) Defendants also worked with Plaintiff's counsel to

5

negotiate an agreement where Defendants would provide the drive to Plaintiff's computer forensics firm for analysis. Defendants' counsel and Plaintiff's counsel negotiated this agreement throughout July, until Plaintiff fell silent. (7/16/18 Email from S. Mautner to A. Viner, **Ex. 3**.)

Defendants are not currently employed. (Marcheret Decl., Ex. 1, ¶ 11; Goel Decl., Ex. 2, ¶ 11.) Defendants did not have job offers in hand when they resigned from Plaintiff. (*Id*.) Defendants have never received any severance pay or other compensation in connection with their resignations from Plaintiff. (Marcheret Decl., Ex. 1, ¶ 12; Goel Decl., Ex. 2, ¶ 12.)

### III. LEGAL STANDARDS

A temporary restraining order "is an extraordinary and drastic remedy, which should not be granted unless the movant carries the burden of persuasion by a clear showing." *Recycled Paper Greetings, Inc. v. Davis*, 533 F.Supp.2d 798, 803 (N.D. Ill. 2008) (citing *Goodman v. Illinois Dept. of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005)). A TRO "is warranted if the movant can make a threshold showing: (1) that the movant has some likelihood of success on the merits of the underlying litigation; (2) irreparable harm to the plaintiff; and (3) no adequate remedy at law exists." *Illusions Too Reality, LLC v. City of Harvey*, Case No. 02-cv-7272, 2003 WL 260335, at *4 (N.D. Ill. Feb. 4, 2003). If, ***and only if***, these three threshold conditions are met, "then the Court must balance the harm to the movant if the injunction is not issued against the harm to the defendant if it is issued improvidently and consider the interest of the public in whether the injunction is to be granted or denied." *Id*.; *see also Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992).

IV.     **ARGUMENT**

    A.     **The "status quo" has not changed for 6 weeks**

There is no reason to enter a TRO because the "status quo" between the parties has not changed since June. Plaintiff has known since mid-June that the hard drive in question is at Best Buy. Dr. Marcheret has already agreed that Plaintiff can have their forensics firm review the hard drive, provided there are some protections for personal information on the drive. Dr. Marcheret's counsel was negotiating this agreement with Plaintiff throughout July. There is no evidence that Dr. Marcheret has any other of Plaintiff's information in his possession, and there is no evidence that Dr. Goel ever had any of Plaintiff's information in his possession after he left. The lack of any urgent need is sufficient reason to deny the TRO in and of itself.

    B.     **Plaintiff Has Failed To Show A Likelihood Of Success On The Merits.**

        1.     **Dr. Goel had no involvement in any of the wrongdoing Plaintiff has alleged and thus cannot be held liable for any of Plaintiff's claims.**

Dr. Goel had no involvement in any of the wrongdoing that Plaintiff has alleged, and thus cannot possibly be held liable for any of Plaintiff's claims. All of Plaintiff's claims are based on allegations that Dr. Marcheret downloaded the 20bin.LSTM file to his Seagate Drive, provided the drive to Best Buy, and deleted the sole copy of the file from Plaintiff's backup drive. (*See generally* TRO Motion, Dkt. No. 9-1.) Plaintiff does not allege that Dr. Goel was involved in any of these activities.[2] (*Id*.) Indeed, Dr. Goel had no idea that the Seagate Drive existed until Plaintiff's counsel contacted Defendants on or about June 18, 2018 to demand that they return the Seagate Drive. (Goel Decl., Ex. 2, ¶ 9.) Dr. Goel has never accessed the contents of the Seagate Drive, and the Seagate Drive has never been in his possession. (*Id*.) As far as Dr. Goel is aware, he does not possess any devices that contain Plaintiff's confidential information. (*Id*.)

---

[2] Plaintiff also does not allege that either of the Defendants have used or are using Plaintiff's alleged confidential information. (*Id*.)

7

While Plaintiff does allege that Defendants "schemed" to establish a competing company using Plaintiff's confidential information and attempted to solicit Plaintiff's confidential industry contacts (*see* TRO Motion, Dkt. No. 9-1, at 18), both of these allegations are clearly false. Defendants are not currently employed, and did not have any job offers in hand when they resigned from Plaintiff. (Marcheret Decl., Ex. 1, ¶ 11; Goel Decl., Ex. 2, ¶ 11.) Additionally, no files have been copied, downloaded, removed, or deleted from the Seagate Drive since Defendants resigned. (Marcheret Decl., Ex. 1, ¶ 10.) Accordingly, Plaintiff cannot show any likelihood of success in its claims against Dr. Goel.

### 2. Plaintiff's DTSA and ITSA claims are likely to fail.

Plaintiff's DTSA and ITSA claims are likely to fail because Plaintiff cannot show that Defendants misappropriated Plaintiff's confidential information. Misappropriation is "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had a reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 920 (N.D. Ill. 2016).

Here, Plaintiff alleges that Dr. Marcheret misappropriated Plaintiff's confidential information by downloading the 20bin.LSTM file to his Seagate Drive and providing the drive to Best Buy. (TRO Motion, Dkt. No. 9-1, at 10-11.)[3] Dr. Marcheret brought the drive to Best Buy to repair it so that he could determine what was actually on the drive. (Marcheret Decl., Ex. 1, ¶ 10.) Other than the Best Buy "Geek Squad," the Seagate Drive has never been provided to any third parties. (*Id.*) Simply put, bringing a hard drive in for repair is not the same thing as

---

[3] Again, Plaintiff does not allege that either of the Defendants have used or are using Plaintiff's alleged confidential information. (*Id.*)

improperly disclosing another party's confidential information. Thus, Plaintiff's trade secret claims must fail.

### 3. Plaintiff's Computer Fraud and Abuse Act claim is likely to fail.

Plaintiff's Computer Fraud and Abuse Act ("CFAA") claim is likely to fail because Defendants did not access a protected computer without authorization or in excess of their authorization. CFAA claims are only actionable if the defendant accessed a protected computer "without authorization" or in excess of his or her authorization. *See* 18 U.S.C. § 1030 *et seq*. Plaintiff does not allege that Defendants accessed their company laptops after their resignations. (*See generally* TRO Motion, Dkt. No. 9-1.) Instead, Plaintiff argues that Defendants breached their duty of loyalty to Plaintiff before their resignations, and that their computer access became unauthorized at that time. (*Id*. at 12.) While the Seventh Circuit has held that a violation of the duty of loyalty can make an employee's access unauthorized in some situations, *see International Airport Centers, LLC v. Citrin*, 440 F.3d 418, 420-21 (7th Cir. 2006), for the reasons discussed in Section IV(B)(4), *infra*, Defendants have at no time violated any duties owed to Plaintiff. Because Defendants only accessed their company laptops while they were still Plaintiff's employees, Plaintiff's CFAA claim must fail.

### 4. Plaintiff's breach of contract and breach of fiduciary duty claims are likely to fail.

Plaintiff's breach of contract and breach of fiduciary duty claims are also likely to fail. First, Plaintiff alleges that Defendants breached their non-disclosure agreements and their fiduciary duties by misappropriating Plaintiff's confidential information. (TRO Motion, Dkt. No. 9-1, at 14, 18.) As discussed in Section IV(B)(2), *supra*, however, Defendants have clearly not misappropriated any of Plaintiff's confidential information. Second, Plaintiff alleges that Defendants "schemed" to establish a competing company using Plaintiff's confidential

9

information and attempted to solicit Plaintiff's confidential industry contacts. (*Id*.) As discussed in Section IV(B)(1), *supra*, however, Defendants are not currently employed, and did not have any job offers in hand when they resigned from Plaintiff. (Marcheret Decl., Ex. 1, ¶ 11; Goel Decl., Ex. 2, ¶ 11.) Moreover, no files have been copied, downloaded, removed, or deleted from the Seagate Drive since Defendants resigned. (Marcheret Decl., Ex. 1, ¶ 10.) Accordingly, Plaintiff's breach of contract and breach of fiduciary duty claims are meritless.[4]

### 5. Plaintiff's copyright claim is likely to fail.

Lastly, Plaintiff's copyright claim must fail because any copying by Defendants was *de minimis*. "For an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement. … This means that even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial." *See Newton v. Diamond*, 388 F.3d 1189, 1192-93 (9th Cir. 2004); *see also Ringgold v. Black Entertainment TV*, 126 F.3d 70, 74 (2d Cir. 1997) (*de minimis* concept "insulates from liability those who cause insignificant violations of the rights of others.").

Here, even if one were to assume that Plaintiff owns a copyright in the 20bin.LSTM file and that Dr. Marcheret copied the 20bin.LSTM file to the Seagate Drive, that alleged copying is *de minimis* and is not actionable. The 20bin.LSTM file has not been removed from the Seagate Drive, and has not been provided to any third parties. (Marcheret Decl., Ex. 1, ¶ 10.) The file is merely sitting on the drive, unused. This is exactly the sort of "technical violation" that is not actionable under the Copyright Act. *See Ringgold*, 126 F.3d at 74.

---

[4] Additionally, the non-solicitation covenant in each of Defendants' employment contracts is unenforceable. Under Illinois law, post-employment restrictive covenants are unenforceable absent adequate consideration. *Millard Maint. Serv. Co. v. Bernero*, 566 N.E.2d 379, 384 (Ill. App. 1st Dist. 1990). Defendants have not received adequate consideration. First, Defendants only worked for Plaintiff for just over a year. Second, Defendants have never received any severance pay or other compensation in connection with their resignations from Plaintiff. (Marcheret Decl., Ex. 1, ¶ 12; Goel Decl., Ex. 2, ¶ 12.) The only compensation that Defendants have received is what they bargained for as the terms of their employment.

10

### C. Plaintiff Has Failed To Show That It Will Be Irreparably Harmed And That No Adequate Remedy At Law Exists.

Plaintiff's Motion must fail because Plaintiff has not shown that it will be irreparably harmed and that no adequate remedy at law exists. A party seeking a TRO must show that, absent an injunction, irreparable harm is not merely possible but likely. *See, e.g., Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction.") (citations omitted); *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) ("Establishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'"). Plaintiff must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits, and for which money damages cannot provide adequate compensation. *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002).

Here, Plaintiff's allegations of irreparable harm are merely speculative. Plaintiff alleges that Defendants are "one step closer" to using Plaintiff's confidential information, and that, should Defendants be permitted to proceed, they "will inevitably disclose" Plaintiff's confidential information to a competitor. (TRO Motion, Dkt. No. 9-1, at 19-20.) Plaintiff notably does ***not*** allege that Defendants are currently using Plaintiff's confidential information to compete, or that Defendants have already disclosed confidential information to a competitor. (*Id.*) Indeed, since Plaintiff first accused Defendants of misappropriating Plaintiff's confidential information back in June of 2018, Defendants' counsel has assured Plaintiff that the information contained on the Seagate Drive has not been provided to unauthorized third parties. (*See generally* 6/21/18 Letter from S. Mautner to B. Skjold, Dkt. No. 1-1 at Exhibit 3.) Accordingly, Plaintiff's alleged injury is at best "merely possible" or speculative, not likely. *Winter*, 555 U.S.

11

at 22.

Plaintiff also cannot show that no adequate remedy at law exists. Plaintiff's claim that it needs to undertake the "nearly impossible" task of recreating the 20bin.LSTM file is meritless. (TRO Motion, Dkt. No. 9-1, at 19.) Defendants advised Plaintiff that the 20bin.LSTM file was moved into or merged with another file called 20bin.LSTM.cnn. (6/21/18 Letter from S. Mautner to B. Skjold, Dkt. No. 1-1 at Exhibit 3, at 1.) Dr. Marcheret even offered to assist Plaintiff in locating the file. (*Id*. at 1-2.) Plaintiff has never accepted Dr. Marcheret's offer. Regardless, the 20bin.LSTM file is in no way related to the commercial version of Plaintiff's software or the revenue generating live strategies that Plaintiff was running. (Marcheret Decl., Ex. 1, ¶ 9; Goel Decl., Ex. 2, ¶ 10.) Rather, 20bin.LSTM was an unproven experimental project that was not at all critical or essential to Plaintiff's running investment strategies. (*Id*.)

Plaintiff's claim that Defendants' actions "have disrupted Rosetta's track record" is likewise meritless. (TRO Motion, Dkt. No. 9-1, at 19.) Any harm to Plaintiff's business interests or goodwill was caused by Plaintiff's decision to shut down commercial operation of its software and cease trading on its two investment strategies after Defendants resigned, not by any of Defendants' alleged actions. (Calvello Affidavit, Dkt. No. 9-2 at Exhibit A, ¶ 45.) In any case, Plaintiff fails to explain how these alleged harms cannot be adequately compensated by a damages award.

### D. The Balance Of Hardships Favors Defendants.

Lastly, even if all three TRO factors favored Plaintiff (they do not), the balance of hardships favors Defendants because Plaintiff's proposed TRO is over-broad and prevents Defendants from using documents and files that are undoubtedly owned by Defendants. Plaintiff's proposed TRO prevents Defendants from "using, disclosing, or transmitting" and "copying, deleting, destroying or altering" the "files specified in Paragraph 42 of the Verified

Complaint." (Proposed Order, Dkt. No. 8, at Exhibit A.) The files listed in Paragraph 42 of Plaintiff's Complaint include, in addition to the 20bin.LSTM file, Dr. Marcheret's folders containing his personal materials and other public domain papers maintained and accumulated from his time at IBM, as well as Plaintiff's counsel's April 9, 2018 letter to Dr. Marcheret. (Complaint, Dkt. No. 1, ¶ 42.) Plaintiff has failed to explain how these files constitute its confidential information. There can be no possible justification for preventing Dr. Marcheret from accessing and using his own personal files.

V.   **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court deny Plaintiff's motion for TRO.

Dated:   August 9, 2018

Respectfully submitted,

*/s/ Cameron M. Nelson*
Cameron M. Nelson
Benjamin P. Gilford
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400
(312) 456-8435

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Cameron M. Nelson, an attorney, certify that on August 9, 2018, a true and correct copy of **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** was served on counsel of record electronically through the Northern District of Illinois CM/ECF electronic filing system.

*/s/ Cameron M. Nelson*
Cameron M. Nelson

*One of the Attorneys for Defendants*