UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSETTA ANALYTICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> VAIBHAVA GOEL and ETIENNE MARCHERET, <br><br> Defendants. | No. 18 CV 5179 <br><br> Judge Manish S. Shah |

ORDER

Plaintiff's motion for a preliminary injunction [8] is denied. A joint status report with a proposal for a discovery plan shall be filed by November 1, 2018.

STATEMENT

Defendants Vaibhava Goel and Etienne Marcheret were at-will employees of plaintiff Rosetta Analytics and designed software code to implement (and attempt to implement) Rosetta's vision for an artificial-intelligence/machine-learning-based program to predict certain market outcomes. This prediction could then be the basis for an investment strategy. When Goel and Marcheret left the company, Goel expressed an interest in seeking employment that could relate to financial markets or investment strategies, and Rosetta discovered that Marcheret transferred certain files from Rosetta to a personal hard drive. Rosetta seeks an order enjoining defendants from disclosing Rosetta's trade secrets and working with machine learning or artificial intelligence to analyze financial data or create investment strategies.

A preliminary injunction is an extraordinary remedy—one intended to preserve the status quo until the merits can be sorted out—and requires the plaintiff to establish: a likelihood of success on the merits, reasonable diligence in pursuing injunctive relief, irreparable harm to the plaintiff, that the balance of harms tips in the plaintiff's favor, and that an injunction is in the public interest. *Benisek v. Lamone*, 138 S.Ct. 1942, 1943–45 (2018).

There is sufficient evidence to suggest that Rosetta's code, particularly the "20bin" code that Marcheret transferred onto his personal drive, is a trade secret and includes confidential information (as that term is used in the parties' non-disclosure agreements). Even in its experimental form, it is a basis for Rosetta's business that

has received commercial interest, and therefore it has economic value. Rosetta has taken steps to protect its confidentiality. Marcheret's transfer was likely an act of misappropriation, because the circumstantial evidence suggests that he selected particular files not for deletion but to take with him for use in future endeavors. I do not, however, infer that Goel knew that Marcheret was taking files. The two were a team, but given the frequency with which they spoke over Slack, I would expect Rosetta to point to some concrete communication to suggest that Marcheret's transfer was done with Goel's knowledge and complicity. The March 2018 Slack chats do not support an inference that Marcheret's April 10, 2018 file transfer was done with Goel's knowledge. There is some likelihood of success against Marcheret for a trade-secret violation and a breach of the confidentiality provisions of the contract. But I am persuaded by Goel's testimony that machine learning coding is problem specific, and therefore, Goel and Marcheret would not inevitably or necessarily use Rosetta's code if they worked in the financial sector. Rosetta's code may be scalable, but that does not mean that Rosetta's code is the only way for Goel and Marcheret to apply machine learning to investment strategies.

The evidence of Goel's and Marcheret's interests in working in financial markets or investment strategies is not sufficient to establish a breach of the non-solicitation term of the contracts. Rosetta has focused on "strategic partners" but that term is broader than the "clients, customers, or accounts" of Rosetta protected by contract. And although Rosetta may hope that a strategic partner could become a customer, there was insufficient evidence to establish that such hope warrants treating the term "prospective customer" so broadly. Courts narrowly interpret contracts that restrict competition, and non-solicitation provisions are enforceable to protect customer relations developed while the employee was working for the employer. *See AssuredPartners, Inc. v. Schmitt*, 44 N.E.3d 463, 474 (Ill. App. Ct. 2015). The evidence that Goel and Marcheret served a strategic partner by assisting in sales presentations did not suggest that the potential investors were viewed as prospective customers, bringing them within the scope of the non-solicitation clause. In addition, there was insufficient evidence to establish that defendants attempted to contact an entity to solicit or divert business away from Rosetta.

The loss of confidential information and the risk of its disclosure can cause irreparable harm. If Rosetta's code found its way into the hands of anyone who could use it to develop an algorithm for making market predictions and investment strategies, Rosetta's competitive advantage would be lost. But Rosetta has not established that it is currently at risk for such an irreparable harm. I am satisfied that defense counsel has secured the devices that could contain Rosetta's information, and there is no evidence to suggest a risk that defendants will otherwise use or disclose the information. The Rosetta code is not currently at risk for unauthorized disclosure.

The requested injunction—prohibiting defendants from working with machine learning as applied to financial products—is overbroad and would cause more harm

to defendants than the harm the status quo poses to Rosetta. Because machine learning applications are so varied, cutting Goel and Marcheret off from an entire sector of the economy harms their employment prospects with little risk of disclosure of Rosetta secrets. Meanwhile, Rosetta's code appears to be under lock and key. And the law already prohibits defendants from using or disclosing Rosetta's trade secrets, so a preliminary injunction to that effect is unnecessary.

In the end, while Marcheret's conduct is a cause for concern, the extraordinary relief of a preliminary injunction is unwarranted.[*] The parties should meet and confer about the forensic review of devices in defense counsel's custody and the disclosure of the complete results of plaintiff's forensic investigation to date before I will order defendants to bear the full costs of a third-party forensic review. The parties shall file a joint status report with a proposed discovery plan by November 1, 2018.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: October 15, 2018

---

[*] The focus of the preliminary injunction hearing was on the disclosure of confidential information and the competitive threats posed by defendants' conduct. The complaint alleges additional claims for copyright infringement, violations of the Computer Fraud and Abuse Act, and breach of fiduciary duties. For the same reasons that I conclude the status quo does not require preliminary injunctive relief, I deny the requested injunction under the other theories raised in Rosetta's complaint.